Moncure, P.
delivered the opinion of the court.
*513 There is a question common to four out of these five cases, to wit: to all of them except the case of S. H. Holland & Co. v. The Commonwealth, which question must first be disposed of; and that is, whether this court has jurisdiction in them, the matter in controversy, ex-elusive of costs, in each of them, being less in value or amount than five hundred dollars.
This question depends upon two others, viz: 1st. Whether these be criminal, or civil cases ; for if they be criminal cases, then there is no limitation on the jurisdiction of the court as to the value or amount of the matter in controversy. But if they be civil cases, then the question is, 2ndly. Whether they come within any of the exceptions enumerated in the constitution.
First, are they criminal or civil cases? We are of opinion that they are civil, and not criminal, cases. They are proceedings authorized by law for the correction of alleged erroneous assessments, and not prosecutions for penal offences. A tax is a debt recoverable, ordinarily, by distress, and for it, an action of debt-may lie. It is not a penalty for an offence, subject to presentment, indictment or information. Those are remedies appropriate to a criminal case, and wholly inappropriate to a civil case. Though a penalty for a violation of a penal law is authorized by statute to be recovered by action of debt, as well as by presentment, indictment or information. They are concurrent remedies for the recovery of such a penalty, which is a debt due to the State as well as a punishment of an offence. The judgments complained of in these cases, were rendered on proceedings instituted by authority of law for the relief of persons aggrieved by erroneous assessments of license taxes. Acts of Assembly 1870-71, p. 121, sections 176 and seq. These proceedings have none of the nature of criminal cases. There could be no question upon this subject, we ■suppose, if the assessments complained of as erroneous had been of simple and single license taxes. But here *514 the assessments were of double taxes, under section 156 of the act aforesaid, Id. p. 115. And the question is, whether the proceedings can be regarded as criminal cases on that account ? ¥e think not. The tax, though double tax, is still in the nature of a tax for the exercise of a privilege, and not of a penalty for the commission of an offence. It is recoverable by distress, like other taxes, and not by presentment, indictment, or information, as a fine for a penal offence. The Legislature deemed it proper that á person should be assessed with a double license tax under the circumstances stated in section 156 aforesaid, and, therefore, so provided. But this double tax is still a mere tax, of the same nature of other taxes, and not a penalty for a criminal offence recoverable by presentment, indictment, or information. Section 176, aforesaid, prescribes the mode of proceeding to correct an alleged erroneous assessment of a license tax, whether it be of a single or a double tax. It would be strange if this proceeding were to be regarded as a civil case when the tax is single, and a criminal case when the tax is double. Section 148 of the act aforesaid expressly declares, that “whenever a license shall be specially required by law, and whenever the General Assembly shall levy a license tax on any business, employment, or profession, it shall be unlawful to engage in such business, employment, or profession, without a license.” And other sections of the act prescribe the penalties which will be incurred by persons who engage, without license, in a business for which a license is so required. These are the penalties referred to in section 183 of the same act, Id. p. 122, which declares that the penalties prescribed in this act shall be recoverable by action of debt, presentment, indictment, or information. And neither that section nor the two following, 184 and 185, have any relation to the double tax imposed by section 156, nor to the proceedings provided by section 17 6 for affording redress against an erroneous assessment.
*515 We, therefore, consider these cases as civil cases ; and so considering them, the next question is, Do they within any of the exceptions enumerated in the constitution, article vi, sec. 2 % That section declares, that this court shall not have appellate “jurisdiction, in civil cases, where the matter in controversy, exclusive costs, is less in value or amount than five hundred dollars, except in controversies concerning the title or boundaries of land, the probate of a will, the appointment or qualification of a personal representative, guardian, committee, or curator ; or concerning a mill, road-wav, ferry, or landing, or the right of a corporation or of a county to levy tolls, or taxes, and except in cases of habeas corpus, mandamus, and prohibition, or the constitutionality of a law.” Certainly none of these,exceptions apply to these eases. But it is said that the third section of chapter 182 of the Code, as amended and re-enacted by the act approved June 23,1870, Acts of Assembly 1869-70, p. 222, includes a “franchise,” in the enumeration of the exceptions in which the matter in controversy exclusive of costs, is not required to be of the value or amount of at least five hundred dollars, to give this court appellate jurisdiction in civil cases. And it is argued, that a franchise is involved in these cases, to wit: the franchise of a license as a storager, and a license as a tobacco auctioneer. Certainly, an exception not included in the constitution, cannot be superadded by an act of the Legislature. The constitution and the act must be construed together,- and where they are in conflict, the constitution must prevail, and the act must give way. The constitution enumerates certain franchises, but does not embrace all franchises, among the exceptions. When, therefore, the act mentions a “franchise,” in general terms, as one of the exceptions, it must be construed to mean such a franchise as the constitution enumerates, and not one which it does not include. We, therefore» *516 think that these cases do not come within any of the ex-ceph°ns enumerated in the constitution-as aforesaid.
It follows from what we have said, that the writs of error awarded in the four cases aforesaid must be dismissed as having been improvidently awarded.
As to the fifth and remaining case, of S. H. Holland & Co. v. The Commonwealth, the matter in controversy, exclusive of costs, is greater in value and amount than five hundred dollars, and this court, therefore, has jurisdiction in that case. Considering the case upon the merits, we proceed to enquire, -whether there be any error in the judgment of the Corporation court of the town of Danville, confirming the assessment of the commissioner in that case? That question depends upon, whether, according to the facts certified by the said court, the plaintiffs in error were bound to obtain a license as commission merchants, or whether the licenses obtained by them, as storagers, and tobacco auctioneers, gave them authority to engage in the business carried on by them ?
The act of February 18, 1871, acts of 1870-71, pp. 68-123, entitled “an act for the assessment of taxes on persons, property, income, licenses, &c., among other things, requires licenses to be obtained by persons who engage in the business of a commission merchant, or of a tobacco auctioneer, or of keeping for compensation, any house, yard, or lot for storage, &c.; and prescribes the penalties to be paid by persons who engage in these pursuits without license. It declares, in general terms, what a commission merchant may do. “Any person licensed as a commission merchant, may sell any personal property except wine, ardent spirits and malt liquors, gold or silver coin, bonds, certificates of public or private debts, or other securities which may be left with or consigned to him for sale.” “Any person buying on commission shall be deemed a commission merchant, and subject to the provisions of this act.” Id. p. 98, § 100. It also declares what a tobacco auctioneer may do: “Any *517 person licensed as a tobacco auctioneer may sell at aucId. tion any tobacco not prohibited by law to be sold.’ Id. p. 103, § 115.
The act of March 24, 1871, Id. pp. 274-284, entitled “ an act imposing taxes for the support of government and free schools, and to pay the interest on the public debt,” among other things, declares the amount of tax to be paid for different liceuses. It declares that “the-specific license tax on every commission merchant or firm shall be thirty-five dollars ; and there shall be a tax of three per centum on the amount of his commissions, to be ascertained,” &c. Id. p. 278, § 19; and that “ the-specific license tax on a tobacco auctioneer to sell shall be thirty dollars.”
These are the acts under which the assessment complained of in this case was made. It appears from the certificate of facts, that the plaintiffs in error, during the year ending on the 30th of April 1871, did business in the town of Danville under a license of storage, and also a license as tobacco auctioneers ; and at the beginning of the year ending 30th April 1872, applied to the-commissioner of the revenue to be reassessed for said business of storagers and auctioneers, but refused to take out license, or be assessed, as commission merchants ; that they were, on and after the first day of May 1871, and at the time of the double assessment complained of by them, engaged in the business of warehousemen, in which said business they were accustomed to receive ou consignment, and sell leaf tobacco only, loose and in prized packages, at auction, but in no other way ; and that they were also accustomed to receive consignments of such tobacco, and make advancements thereon in money, but received no consideration in the shape of interest, or otherwise, on such advances, keeping an account with their consignors, and paying to-them, or receiving from them, whatever balances appeared to be due either party, upon settlement of ac *518 counts of the sale of such tohaeco, so consigned and received ; and that for their services rendered in their business, they made the following charges, viz : ■
Warehouse charges,
Commission 2J, tax
Auction fee, -
Freight,
We think that, according to the foregoing facts, the plaintiffs in error were commission merchants as well as tobacco auctioneers, and were liable to the tax imposed on each of those two classes, according to the true intent and meaning of the acts aforesaid. That they were tobacco auctioneers and storagers, and had licenses as such, did not'preveut them from being commission merchants, or exempt them from the necessity of obtaining a license as such. The tax on a tobacco auctioneer and a storager as such is very trifling in amount, comparatively. The specific tax on a license to the former is but thirty dollars, and no tax appears to be charged in the form of a per centage on the amount of his sales or of his commission. The specific tax on a license to a storager, is but twenty-five dollars on evei’y house, except that in a city or town whose population is five thousand, the tax is $50, and on every yard, wagon-yard or lot, ten dollars; while the specific license tax on every commission merchant or firm is $35 ; and there is, moreover, a tax of three per centum oh the amount of his commissions. If this specific and this per centum tax on a commission merchant could be avoided by obtaining license as a storager and a tobacco auctioneer, no one would ever obtain a license as a commission merchant for the purpose of selling tobacco on commission. And thus the large revenue, which was no doubt expected, and might well be expected, to be derived from that source, would be entirely lost to the State. Tobacco is *519 one of the chief staples of the State ; and it is often, if not generally, sold by its growers through the agency of commission merchants. It is perhaps more generally stored with a commission merchant, and sold through his agency, than any other product of the farmer. The plaintiffs in error extensively conducted a business of that kind, except that they sold only as auctioneers. They solicited, and extensively received, consignments for that purpose ; making advancements to their consignors, and charging and receiving a commission for their services, as any other commission merchants would do. The extent and value of their business is shown by the amount of the tax assessed against them as commission merchants. The double tax was $670 ; half of which is $335. Deduct $35 for the specific tax, and we have $300 for the per centage tax, which would make the amount of their estimated commission as tobacco auctioneers ten thousand dollars per annum,, besides their warehouse charges and auction fees. We do not mean to say that a tobacco auctioneer cannot be compensated by a commission on the amount of his sales, without being a commission merchant. Such a commission as auctioneer merely, would be comparatively small in amount. He might be, as he no doubt often is, employed by a commission merchant to sell, as an auctioneer, tobacco consigned to such merchant, who would he chargeable with a per centage tax on his commission. In such a case the auctioneer generally receives a specific fee ; but even though compensated by a commission for his services, he would not, thereby, become a commission merchant. But where one person combines in him.self the characters both of an auctioneer and a commission merchant; where he receives tobacco from the grower on consignment, sells it at auction, makes advances to the owner, charges him storage, an auction fee; and 2J per cent on the amount of sales, and accounts with him for the balance, as in this case, we think he is *520 bound to obtain a license, both as tobacco auctioneer and as a commission merchant, and to pay the tax assesse(i thereon according to law.
We are therefore of opinion that there is no error in the judgment in the case of S. H. Holland & Co. v. The Commonwealth, and that it ought to be affirmed.

In the first four cases the areals were dismissed. In the last case it was affirmed.